All right, Mr. Wilson, you are here. So we're inclined, Mr. Wilson, to go ahead without your opposing counsel. I will defer to your judgment. I don't think that I have ever encountered such a situation, and I hope that this is not perceived as taking advantage of her on grounds that I think that all of us have a there-but-for-the-grace-of-God-go-I feeling about the possibility of missing an oral argument. But if it is your preference to continue, I can certainly put forth my case today. We're here. You're here. We're ready. With that, Scott Wilson. It's clear you don't get rebuttal. May it please the Court, Scott Wilson of Eric Buchanan Associates in Chattanooga, Tennessee, representing the plaintiff appellant, Yulunda McAlister. This is an ERISA long-term disability insurance case, but unlike the typical long-term disability insurance case, we're not actually here today arguing about whether Ms. McAlister is disabled. Rather, we're here arguing about why she is disabled. It's been Liberty's position that Ms. McAlister's disability is psychological and therefore subject to the policy's 24-month mental and nervous limitation. It's our position, on the basis of an independent neuropsychological examination, that she suffers an organic cognitive disorder which, by both case law and Liberty's own historical claims handling practices, should not be subject to that limitation. Briefly, before turning to the merits of that dispute, the nature of the dispute should have a significant bearing on the way that the matter is judged. The 24-month mental and nervous limitation... Let me stop you right now to maybe help focus this and cut to the chase. There's a lot of writing being devoted in this case to the cause of this mental illness. There's no question she has some sort of mental problem, right? Yes. There's no question that there's a two-year limit for that. Is that right? There is a two-year limit for conditions that are psychological or psychiatric. Now, the policy says you look at the most current DSM. The most current DSM says they no longer distinguish between causes of the illness. So how do you win? That is an issue, Your Honor, that, quite frankly, I don't think that I anticipated that question. I don't think that... Well, you're familiar with the clause in the policy, the long-term disability policy term, right? Yes, sure. It says mental illness means psychiatric or psychological condition classified as such in the most current edition of the DSM, regardless of the underlying cause of the mental illness. So let's assume that you're right. It's organic. It doesn't matter, according to the language of the policy, unless I'm just missing something. Firstly, I believe, and, again, this wasn't something that we extensively briefed below, so I'm going out on a limb here. I believe that the DSM-5 replaced the DSM-4 tier, DSM-4 text revision, actually after the complaint was filed, certainly after the claim was filed. And neither party was administratively addressing the question of whether or not a revision to the DSM while the case was actually progressing. Well, you're referring to DSM-5, right? Yes. I think what happened here is they used DSM-4, right? DSM-4 text revision, the one immediately prior to the DSM-5, Dr. Let me try this differently for you. Tell me if I'm right or wrong about this. The final decision in this case was January 14, 2014. Yes, Your Honor. The parties have all assumed that DSM-4 applied, and all I'm telling you is that DSM-5 was published in 2013. So everybody, if I'm right about that, seems to have been wrong right from the start. But let's just ignore DSM-5. DSM-4, which you all used, I'll bet perhaps incorrectly, notes that the term organic mental disorder is no longer used because it incorrectly implies that non-organic mental disorders do not have a biological basis. So if I'm reading that right and if I understand it correctly, it doesn't matter what the cause is. Your Honor, assuming that all parties are relying on the DSM-4, on page 21 of Plaintiff Appellant's brief, I summarized what the DSM-4 has to say about cognitive disorders. And it states, The predominant disturbance is a clinically significant deficit in cognition, representing a significant change from a previous level of functioning. For each disorder in this section, the etiology is either a general medical condition, although the specific general condition may not be identifiable, or a substance, that is, drug or alcohol abuse, or a combination of the factors. So the DSM-4 maintains a distinction between cognitive disorders thought to be the result of medical or substance abuse versus psychiatric mood disorders. I guess the question I have for you is, if I understand your argument correctly, you're making your point sort of indirectly. You have to establish or persuade somebody that her depression is basically what we're talking about, right? No, Your Honor. Specifically, what we are talking about is the cognitive deficits measured in terms of decreased memory, decreased attention and concentration. You have to show that the cognitive deficits have an organic cause, correct? Yes, Your Honor, though with the proviso that it would be plaintiff's position that the mental and nervous limitation functions as an exclusion to coverage, and that therefore, under common law trust principles, the burden is technically on liberty on that point. I understand your point, and I appreciate you reminding me of that. But setting aside the burden, you're arguing that it has an organic cause. You're pointing to the DSM-4, I guess, definition of cognitive disorder not otherwise specified, right? Yes, Your Honor. And you're pointing to some explanatory language there that says that particular condition, as you just read, has an organic or biological, whatever it was, cause. Yes, Your Honor. And so you're saying, therefore, the cause of this condition, her deficits, must be organic. It seems like the other side is taking a more direct approach to causation here. Namely, they have a number of physicians who have looked at radiology-type stuff of your client's brain and say there is no evidence of any organic dysfunction. Is that a fair characterization, do you think, of what they're saying? I would think that that is a fair characterization of their position in litigation. I think that my response to that... Well, let me ask a question before you answer that question. Let me just tee it up. So, I mean, you know it's a pretty deferential standard of review in these cases. And my question is, when they have a number of physicians who say there is no evidence of any organic problem, and that's sort of a direct conclusion that they're making rather than a more inferential one, why isn't that substantial evidence that supports the denial of benefits here? In answer to that, I would first note by saying that of all of the doctors that the defendant cites to, exactly one of them, Dr. Alter, had actual access to reviewing the neuropsychological exam. And certainly many people have had the experience of going to the emergency room having twisted their ankle, and they may run into a nurse who suspects that it's just a sprain, and they may run into another nurse who suspects that it's just a sprain. And finally, the emergency room doctor gets an X-ray and reveals that there's actually a broken ankle. I don't think that it's reasonable to weigh the opinion that it's a broken ankle versus an opinion that it's just a sprain equally, when only one of the people who was offering the opinion actually had access to the X-ray. Only one doctor, Dr. Alter, had access to the neuropsych... He says there's no organic problem. Your Honor, I think that... He did say that unequivocally. I would like to be very precise about what Dr. Alter said. Firstly, Dr. Alter said, and I quote, the neuropsychologist's conclusion that the claimant shows evidence of a progressive organic disease affecting her brain is not supported by the data. I agree that he said that, but he also didn't say why. We know that Dr. Albert looked at the data and said it does. We know that Dr. Alter... Albert, the one that he's referring to? Yes, yes, Your Honor. Albert doesn't say directly that there is an organic cause here. She never says that, right? No, she gave a diagnosis from the DSM-IV, which by definition is caused by a general medical condition or by substance abuse. So it's the indirect sort of reasoning. But the second thing that Dr. Alter said, which I think is significant, is that he didn't give us his opinion as to what he clearly thought the cause definitely was. He said attributed causation to a wide range of factors, including psychiatric factors, apneic episodes, that is poor breathing at night, poorly managed blood sugars, elevated lipids, hypertension. So Dr. Alter lists both potential psychiatric cause and potential physical cause. So we have one doctor saying, I see implicitly a cognitive organic condition, and we have another doctor who doesn't say, I clearly think this is psychiatric, not physical. Instead, the doctor says it's multifaceted, psychiatric and physical in varying combinations. But, I mean, I think if we look at what he's saying as a whole, yes, he says a variety of things, but he elsewhere specifically says not this thing, no evidence of, you know, organic problems here. And he also didn't tell us why. So the court and also Liberty, who was reviewing the opinions, wasn't in a particularly good position to be judging the relative merits of Dr. Alter versus Dr. Albert, because we had no reasoning behind it. What about Dr. Misha? I forget if it's a he or she. Is it a he? Misha, I believe, was a he. Okay. I mean, didn't Dr. Misha specifically say that your client's MRI did not show any organic problem? He said on a second MRI that he was unable to find anything on that MRI on which he could pin the problem. Well, again, he was saying that without the full context of all of the record, neuropsychological testing hadn't been done at that point, so we don't know what his opinion would have been had he had the opportunity to review the later testing. Okay. But on the other hand, Dr. Albert didn't have Dr. Misha's MRI data, right? I mean, isn't that a reason to sort of impeach somewhat Dr. Albert's conclusion? I mean, it's not really his or her. I forget. I get them mixed up. Conclusion, though? I mean, she didn't have this MRI data, which another doctor says shows there's no organic cause. I would agree with that, but I would also agree that when you go through the claims notes, when you go through the manner in which Liberty handled the case, even though in previous similar cases Liberty has gone to a great deal of effort to establish cognitive versus psychological, specifically asking peer reviewers to give an opinion on that topic, Liberty didn't delve into it. There is no claims note when you dig into the file saying, okay, for all these reasons we've made a definitive conclusion that it's psychological versus organic. I would contend that because Liberty didn't prove that it was organic consistent with its burden of proof, that the correct remedy should be reinstatement of benefits. But perhaps you are right that the whole thing hasn't been reviewed properly by any of the doctors, and the correct thing to do is simply to remand the case to allow all of the evidence to be considered by all parties to the case. All right. Thank you, Mr. Wilson.